IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

J. T. SHANNON LUMBER COMPANY, INC.                              PLAINTIFF

VS.                                              CAUSE NO. 2:07-CV-119

GILCO LUMBER, INCORPORATED,
JIANLIANG "GARY" XU, CLAIRE
CHEN, RICHARD BARRETT, and
JOHN DOES 1, 2 AND 3                                          DEFENDANTS

GILCO LUMBER, INCORPORATED'S REBUTTAL TO PLAINTIFF'S RESPONSE TO
THE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Plaintiff's Response to the motion pending before this
Court fails to establish personal jurisdiction exists over
Defendant Gilco Lumber, Incorporated ("Gilco").  In opposing
Gilco's Motion to Dismiss, the Plaintiff bears the burden of
setting forth admissible evidence to establish a prima facie case
that exercising personal jurisdiction over Gilco in Mississippi is
statutorily and constitutionally permissible. *Wyatt v. Kaplan,* 686
F.2d 276, 280 (5th Cir. 1982).

To meet this burden, the Plaintiff must show that both the
Mississippi "long arm" statute <u>and</u> Constitutional Due Process
requirements have been met. *Willow Creek Exploration, Ltd. v.
Tadlock Pipe & Equip., Inc.,* 186 F.Supp. 2d 675, 680 (S.D. Miss.
2002)(citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 624
(5th Cir. 1999).

The Plaintiff here cannot make this necessary showing.  J.T.
Shannon Lumber Company is not the proper party in interest and
cannot show any adverse actions taken against it.  Even if the

Plaintiff were a proper party in interest, the Plaintiff has still not met its burden of making a prima facie case in favor of exercising personal jurisdiction in Mississippi. It has not shown Gilco was doing business in Mississippi, has not shown a tort occurred against it in Mississippi, and has not shown that exercising personal jurisdiction over Gilco comports with Due Process safeguards.

All the Plaintiff has put forward in support of its "case" are conclusory allegations, essentially repeating the allegations of the Complaint, unsupported by substantive admissible evidence. This alone is insufficient.

The Fifth Circuit Court of Appeals has rejected the idea that mere conclusory allegations by the resident plaintiff is sufficient to establish specific personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865 (5th Cir. 2001)("Moreover, the District Court correctly held that the prima-facie case requirement does not require the court to credit conclusory allegations, even if uncontroverted." See also *Seitz v. Envirotech Sys. Worldwide, Inc.,* 513 F.Supp. 2d 855, 859-60(S.D. Tex. 2007).

Each of these matters are addressed separately below.

**I.    J.T. SHANNON LUMBER COMPANY CANNOT PROVE ITS JURISDICTIONAL CASE BECAUSE IT IS NOT THE COMPANY ALLEGEDLY WRONGED**

A large part of the Plaintiff's Response is dedicated to showing that Gilco committed various torts against it, J.T. Shannon Lumber Company, Inc., in Mississippi and therefore this Court should exercise Personal jurisdiction over Gilco, a nonresident defendant.

However, J.T. Shannon Lumber Company, Inc., is not the real party in interest in this cause. Since filing its Motion to Dismiss, Gilco has learned that J.T. Shannon Lumber Company, Inc. is but one of four distinct subsidiaries of the Shannon Group. According to the Shannon Group web site, the subsidiary serving the China and Asia markets is Shannon Lumber International, Inc., not J.T. Shannon Lumber Company, Inc.. See copy of web pages attached hereto as Exhibits "A," "B" and "C."

Shannon has recently produced documents, including invoices, consistent with the web page that Shannon Lumber International, Inc. is the entity selling products to China, not J.T. Shannon Lumber Company, Inc.. However, due to a protective order and confidentiality agreement, Gilco is prohibited at present from attaching the documentation to this Rebuttal. See Agreed Confidentiality and protective Order, Docket No. 88.

The overly inclusive designation of disclosed information by the Plaintiff as "Highly Confidential-Lawyers Only" precludes use

of relevant documents as exhibits to this rebuttal at this time but resolution of this issue between counsel on this matter will be attempted.  However, for the purposes of determining jurisdiction, Gilco is able to establish through public documents that Shannon Lumber International, Inc. is a separate corporate entity created through the State of Delaware[1] and that it is the subsidiary with the China and Asian market. See Exhibit "C," and certified copy of Shannon Lumber International, Inc. Delaware incorporation records attached hereto as Exhibit "D."

This is important not merely for purposes of standing to sue, but also for determining jurisdiction. As noted, the Plaintiff must put on sufficient evidence that the state "long arm" statute has been satisfied, through the doing of business in Mississippi by Gilco or the commission of a tort in whole or in part in Mississippi, both of which are discussed further below.

Since the Delaware corporation of Shannon Lumber International, Inc., is the international market subsidiary of the Shannon Group, a prima facie case for personal jurisdiction would necessarily include evidence of a tort committed <u>against Shannon Lumber International, Inc.</u> in Mississippi.  It is insufficient to assert that a tort was committed against <u>some</u> entity in

---

[1]These documents also establish that until 2007, Shannon Lumber International, Inc., listed its principal place of business as Doylestown, Pennsylvania.  See Exhibit "D," pages 5,8 11, 14, and 17.  It was not until its 2007 report that SLI listed Mississippi as its principal place of business.  Exhibit "D," page 20.

-4-

Mississippi; the named plaintiff must be the actual injured party. J.T. Shannon Lumber Company Inc., is not that party.

The Plaintiff cannot be permitted to "pierce its own veil" for the purpose of asserting claims which do not belong to it.  See *Stamp v. Inamed Corp.,* 777 F.Supp. 623, 627 (N.D. Ill. 1991)("Where corporations observe the formalities incident to separate corporate existence...they will not be permitted to disregard the distinction for the purpose of avoiding the burdens likewise incident to the maintenance of separate corporate identities."); c.f., *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir. 1979)("...a business enterprise has a range of choice in controlling its own corporate structure.  But reciprocal obligations arise as a result of the choice it makes.").

J.T. Shannon Lumber Company, Inc. and Shannon Lumber International, Inc. were voluntarily created as separate legal entities and have reaped the benefits of individual legal identities for many years.  It would be substantially inequitable for the Plaintiff to set aside the corporate formalities when it perceives benefit from doing so.  Having been set up as separate entities, J.T. Shannon Lumber Company, Inc., and Shannon Lumber International, Inc., should not now be permitted to "avoid[] the burdens likewise incident to the maintenance of separate corporate identities."

The Plaintiff compounds its error with its reliance upon the affidavit of its corporate officer, Jim Garrard.  Mr. Garrard's affidavit was attached to the Plaintiff's response and is the subject of a separately file Motion to Strike.  Everything in Garrard's affidavit appears to refer to J.T. Shannon Lumber Company, Inc. Company, Inc., not Shannon Lumber International, Inc.

Further, although not admissible, Mr. Garrard opines that either Claire Chen <u>or</u> Gary Xu improperly accessed its server and therefore the various asserted torts occurred.  However, Mr. Xu was authorized to access the Plaintiff's server.[2]  It was part of his job as a Shannon Lumber employee.  It is insufficient for the Plaintiff to state that <u>someone</u> accessed its servers; it must, at a minimum, make a prima facie showing of who that person was.  That is particularly important here, since, as noted above, at least one of the "suspects" was authorized to do that of which the Plaintiff complains in this litigation.

## II.   THE MISSISSIPPI "LONG ARM" STATUTE DOES NOT CONFER JURISDICTION OVER GILCO

As the necessary first step in making its prima facie case, the Plaintiff is required to show that Mississippi's "long arm" statute allows jurisdiction over a nonresident defendant.  The Plaintiff has not done so.  Rather, the Plaintiff attempts to divert the Court from this failure by discussing at length that

---

[2]The affidavit suggests the server belonged to J.T. Shannon, not Shannon Lumber International.

exercising personal jurisdiction over Gilco in this matter does not violate constitutional protections.[3]

The district courts sitting in Mississippi have repeatedly recognized that Mississippi's "long arm" statute is <u>not</u> coextensive with the limits of due process.  See, e.g., *McRae's, Inc. V. Hussain*, 105 F.Supp. 2d 594 (S.D. Miss. 2000).  Therefore the Court must first determine whether the state statute is satisfied before it even considers analyzing the constitutional requirements. *Willow Creek Exploration, Ltd. v. Tadlock Pipe & Equip., Inc.,* 186 F.Supp. 2d 675, 680 (S.D. Miss. 2002)(citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999).

Only if both these requirements are met may a district court properly exercise personal jurisdiction over a nonresident defendant.  *Id.*  Thus, if the Mississippi "long arm" statute is not satisfied, the Court need not even address the constitutional requirements and personal jurisdiction does not exist.

As the Court is aware, the Mississippi statute provides three bases for exercising personal jurisdiction over a nonresident defendant: (1) the making or performing (in whole or in part) of a contract in Mississippi; (2) the commission of a tort (in whole or

---

[3]The Plaintiff cites personal jurisdiction cases dealing with various computer offenses in support of its assertion of jurisdiction.  These cases will be discussed in more detail in the section dealing with the due process analysis.  But it should be noted that the Plaintiff has been forced to rely on these cases because making this a "computer case" is the only possible way the Plaintiff can try to establish jurisdiction.  The alleged access of a computer in Mississippi is, at best, tangential to the Plaintiff's alleged claims, but for jurisdictional reasons, it has temporarily taken center stage.

in part) in Mississippi; or (3) the doing of business in Mississippi.  Miss. Code Ann. § 13-3-57.

The Plaintiff does not allege jurisdiction is proper under the contract prong of the statute, only the tort and "doing business" prongs.

### III. THE PLAINTIFF HAS FAILED TO MAKE A PRIMA FACIE CASE THAT GILCO WAS "DOING BUSINESS" IN MISSISSIPPI UNDER THE "LONG ARM" STATUTE

In its Response, the Plaintiff alleges that because Gilco on occasion sold it lumber in the past and on one occasion a Gilco representative toured the Plaintiff's site, then Gilco was doing business in Mississippi such that the "long arm" statute has been satisfied.  Respectfully, the Plaintiff misapprehends applicable law.

As the Plaintiff agrees in its response, in order to qualify as "doing business" under the Mississippi long arm statute, the Plaintiff was required to show three things: (1) that Gilco purposefully performed some act or consummated some transaction within Mississippi; (2) that the cause of action arose from or was connected with that act or transaction; and (3) the assumption of jurisdiction does not offend traditional notions of fair play and substantial justice. *Cypress Pharm., Inc. v. Tiber Lab.*, LLC, 504 F.Supp. 2d 129 (S.D. Miss. 2007).[4]

---

[4]Gilco acknowledges a couple of cases have determined the nexus requirement was pretermitted by the 1991 revision of the "long arm" statute. However, the great weight of authority since the 1991 revision, from both

A plain reading of both the Complaint and Plaintiff's Response to the Motion to Dismiss clearly shows these required elements cannot be satisfied.  Although the Plaintiff takes pains  to create the impression that Gilco completed a number of sales to it, the Plaintiff fails to even allege that any of the various causes of action in the Complaint arose from those sales or were connected with those sales. On the contrary, the Plaintiff alleges torts completely separate and apart from those timber sales.[5]

Additionally, the Plaintiff's response does not recognize that a purposeful act under the statute must be initiated by the nonresident defendant.  A resident plaintiff cannot create personal jurisdiction by default by soliciting a nonresident defendant. Such default jurisdiction violates the statutory requirement of purposeful action by the nonresident defendant.

The Fifth Circuit has recognized this requirement for the "doing business" prong of the Mississippi long arm statute in *Rittenhouse v. Mabry*, 832 F.2d 1380 (5th Cir. 1987).   In *Rittenhouse*, the Mississippi plaintiff solicited the services of a Tennessee physician and then attempted to sue the physician and his

---

Mississippi state appellate courts and federal district courts, continue to require a nexus between the purported purposeful act and the claimed tort. See, e.g., *Cypress Pharm., Inc. v. Tiber Lab.*, LLC, 504 F.Supp.2d 129 (S.D. Miss. 2007), *Williams v. Bud Wilson's Mobile Home Serv.*, 887 So. 2d 830 (Miss. Ct. App. 2004), *Rockaway Commuter Line, Inc. v. Denham*, 897 So. 2d 156 (Miss. Ct. App. 2004), *Hogrobrooks v. Progressive Direct*, 858 So. 2d 913 (Miss. Ct. App. 2003) and *Bankplus v. Toyota of New Orleans*, 851 So. 2d 439 (Miss. Ct. App. 2003).

[5]And these timber sales were to J.T. Shannon Lumber Company, Inc., not Shannon Lumber International.

-9-

office in Mississippi.  The Fifth Circuit found the "doing business" prong of the long arm state had not been satisfied because "...the corporation does not solicit patients from Mississippi or advertise there. ... Those cases ... are also distinguishable in that the defendant had taken some act to purposely avail himself of the benefits of the forum state. ... Mabry and MRPC did not similarly avail themselves of the benefits offered by Mississippi." *Rittenhouse*, 832 F.2d at 1385, 1386.

In this case, it was the <u>Plaintiff</u> who solicited the business of Gilco and invited Gilco's representative to its Mississippi location, not the other way around.  The Plaintiff has never contested this.  The affidavit of Shannon officer Jim Gerrard attached to the Plaintiff's Response to the Motion to Dismiss quotes without disagreement the affidavit of Gilco's Scott England which recounts the history of overtures by Shannon to Gilco.

The Plaintiff has neither alleged nor provided any evidence whatsoever that Gilco deliberately reached into the State of Mississippi to reap the benefits of doing business here.  There is no evidence of solicitation by Gilco in Mississippi, advertising specifically directed at Mississippi or any other deliberate, purposeful steps taken by Gilco as are required to satisfy the "doing business" prong of the "long arm" statute.

## IV. THE PLAINTIFF HAS FAILED TO MAKE A PRIMA FACIE CASE THAT GILCO COMMITTED A TORT IN MISSISSIPPI

The Plaintiff appears to be assuming that Mississippi law would apply to this controversy and therefore what constitutes a tort in Mississippi is the substantive rule of law that must be applied. However, there was no contract between Shannon and Gilco and therefore no contractual choice of law provision to be followed. Instead, Mississippi law dictates the "center of gravity" test be applied to determine which interested jurisdiction's substantive law will apply. *Ford v. State Farm Ins. Co.,* 625 So. 2d 792, 794 (Miss. 1993).

The "center of gravity" test measures the contacts between the parties and the forum state. *Id.* There are a number of factors which may be considered, but in the end, the polestar consideration is which jurisdiction has the most substantial contacts with the parties and the controversy. *Id.*

In this case, that jurisdiction is China. As has been repeatedly noted here, all of the improper actions ascribed to the defendants occurred in that country and whether or not those actions constitute torts in China should determine the outcome of this litigation, not whether or not such actions constitute torts in Mississippi.

Assuming some American law would apply to this claim, it is insufficient for the Plaintiff to assert that Gilco committed a tort against some corporate entity. To be basic, it is completely

irrelevant to statutory interpretation whether Gilco committed a dozen torts within this State if none of the torts were committed against the plaintiff actually bringing suit.  The actions, all of which allegedly occurred in China, were (according to the Plaintiff's Complaint) directed at cutting into the Asian market, a market which "belongs" to Shannon Lumber International, not J.T. Shannon Lumber Company, Inc.

However, assuming the Plaintiff can overcome the separate corporate identity of Shannon Lumber International, Gilco addresses the specific tort arguments set forth in the Plaintiff's Response. The Plaintiff does not press all the claims of its Complaint as evidence of a tort being committed in Mississippi.  It only asserts five: conversion of trade secrets, misappropriation of trade secrets, violation of the Mississippi Uniform Trade Secrets Act ("MUTSA")and the federal Computer Fraud and Abuse Act ("CFAA"), and "the inducement of Xu to breach his duties [to Shannon]." Each of these are addressed individually below.

### A.   Common law torts claims for misappropriation of trade secrets are preempted by the MUTSA.

Gilco does not concede that any trade secrets actually are at issue in this litigation, nor that it had any involvement in improperly obtaining such information even such do exist.  However, without concession or waiver of any defenses, it must be noted that the Plaintiff cannot maintain causes of action for the common law torts of conversion of trade secrets, trespass to chattels of trade

-12-

secrets or misappropriation of trade secrets. The Mississippi
Uniform Trade Secrets Act preempts such common law tort claims (if
they even exist) under Section 75-26-15. *Fred's Stores of Miss.,
Inc. v. M&H Drugs, Inc.*, 725 So. 2d 902 (Miss. 1998). Gilco
therefore asserts that the Plaintiff's arguments regarding these
alleged torts should not be considered by the Court in determining
the question of Personal jurisdiction.

### B.   The Plaintiff has failed to put forth any evidence that any breach of MUTSA occurred in Mississippi.

The Plaintiff asserts that because it has alleged a violation
of the Mississippi Uniform Trade Secrets Act, this Court may
exercise personal jurisdiction over Gilco.  It is unclear whether
the Plaintiff means that a violation of the Trade Secrets Act
constitutes a tort and therefore satisfies the tort prong of the
"long arm" statute.  However, because this argument is included in
the section of the Plaintiff's Response asserting the tort prong of
the long arm statute has been satisfied, Gilco assumes this is the
meaning the Plaintiff intended to convey.  Regardless, the MUTSA
has specifically subsumed common law tort causes of action of
misappropriation of trade secrets.  The only recourse for such
claims is through that statute.

In order to establish a breach of the MUTSA, the Plaintiff
would need to establish: (1) that a trade secret existed; (2) the
trade secret was acquired through a breach of a confidential

relationship or discovered by improper means; and (3) the trade secret was used without the plaintiff's authorization.

Element (1), the existence of a trade secret is not really at issue for purposes of this motion. Assuming the Plaintiff's trade secrets were used without its permission, element (2), it cannot be disputed that use was made in China, not Mississippi. This leaves only element (3) regarding acquisition of the alleged trade secret and the Plaintiff asks this Court to leap with it to the conclusion that its customer information was taken from its server and must have been taken by Gilco.

Assuming Gilco actually acquired Shannon's customer information, there are limitless possibilities as to how that could have occurred without ever improperly accessing the Mississippi server-Gary Xu could have printed information as part of his legitimate duties for Shannon; Mr. Xu could have verbally told his wife or another person; Mr. Xu could have downloaded the information to a disk, again, as part of his legitimate duties.[6]

The Plaintiff is asking the Court to adopt the supposition which suits it best, without any supporting evidence at all, and ignore all other reasonable possibilities. This is insufficient. Because the Plaintiff is alleging jurisdiction based upon a tort,

---

[6]That there are so many possibilities as to how information could have been transferred emphasizes the marginal importance of the server's location in Mississippi and highlights that the actual conduct alleged occurred in China.

the Plaintiff must make a prima facie case on the merits to withstand a motion to dismiss. *Wyatt,* 686 F.2d at 280.

The Complaint alleges that Gilco sold lumber to Shannon's customers in China and did so by obtaining customer information from Shannon's server.  However, the Plaintiff has put forward no evidence that, if Gilco made sales to common customers, Gilco did not do so through completely independent means, or that the customer information allegedly misappropriated was actually taken from the Mississippi server. The Plaintiff has not made a sufficient showing on the merits to withstand Gilco's motion to dismiss.

Additionally, the language of the Plaintiff's response makes clear that the Plaintiff is setting forth a <u>due process</u> argument that a Trade Secrets Act violation provides for personal jurisdiction in Mississippi.  Again, the due process analysis is only reached once this Court has determined the long arm statute is applicable and due process analysis has no place in that determination.

### **C.   <u>The Plaintiff has failed to put forth any evidence that Mississippi recognizes the tort of conversion of intangible property and failed to put forth evidence that any element of the tort of conversion took place in Mississippi.</u>**

As the Plaintiff acknowledged in its Response, the tort prong of the "long arm" statute is not satisfied unless the actual tort (or an essential element of the tort) was committed within this

-15-

State; that consequences occurred or flowed into Mississippi as a result of a tort does not satisfy this requirement. *Allred v. Moore & Peterson*, 117 F.3d 278, 282(5th Cir. 1997).  See also *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

The Plaintiff attempts to satisfy its burden by arguing that because its computer server was located in Horn Lake, Mississippi, then the various torts were committed here.  Respectfully, this is a misinterpretation of applicable authority, the elements of the claimed tort and the creation of a brand new tort itself.

Mississippi has never hitherto recognized a tort of conversion of intangibles, which is what the Plaintiff asserts Gilco converted. All cases located deal with conversion of physical objects. Nor is Mississippi likely to recognize conversion of an intangible since an essential element of the tort of conversion is involvement of "goods."  "Goods" is defined as tangible or movable personal property other than money.  *Black's Law Dictionary,* Seventh Ed., 1999, pg. 701.

In essence, the Plaintiff is asking this Court, which is bound to apply Mississippi law, to recognize an entirely new state-law tort, redetermine the elements of the existing tort by redefining "goods" or by simply redacting that element all together.  Gilco respectfully submits redefining substantive state law is not part of this Court's personal jurisdiction inquiry and state law as it stands should be applied.

-16-

However, even if such a claim could be cognizable under Mississippi law, the Plaintiff would still have to show the elements of the tort occurred within Mississippi, either in whole or in part.  The tort of conversion consists of affirmative intentional acts to exercise dominion and control over goods which are inconsistent with the true owner's rights.  *PACCAR Fin. Corp. v. Howard*, 615 So. 2d 583, 588-89 (Miss. 1993).  Thus, the Plaintiff must show (a) affirmative intentional acts; (2) exercise of dominion and control; (3) of its goods.

The alleged intentional acts committed by one or more of the defendants was the taking of the Plaintiff's business information. That act, if it took place at all, occurred in China, when an unauthorized individual allegedly input an improperly obtained password into the Plaintiff's remote server program and hit the enter key.  Where the server is located is irrelevant to the conversion claim. The Plaintiff cannot substitute electronic consequences for the actual acts taken by the alleged tortfeasor for this element of conversion, which is what it is attempting to do.  It is the intentional act which is prohibited. The Plaintiff therefore cannot establish that the first element of conversion occurred in Mississippi.

With respect to the second element, the Plaintiff has not alleged that any defendant dispossessed it of its goods, or that any defendant exercised dominion or control over its goods.

-17-

Information in and of itself has no corporeal being of which the true owner can be dispossessed or dominion exercised by another. This is why the tort of conversion is such a poor "fit" to intangible property.

What the Plaintiff actually alleges is not that it was improperly dispossessed of its property or that another controlled or maintained dominion over it —meaning the Plaintiff no longer had it or had unfettered access to it (the historical application of conversion)–but that it no longer had it <u>exclusively</u>.  The Plaintiff therefore cannot establish that the second element of the tort of conversion.

The Plaintiff has not alleged any "goods" which have been converted.  As noted above, "goods" are defined as tangible objects.  The only thing the Plaintiff has alleged to have been converted is information which is both intangible and incorporeal and therefore neither convertible nor "goods."

The Plaintiff therefore has not put forward any facts to support any element of the tort of conversion has having occurred in Mississippi.

### D.   The Federal Computer Fraud and Abuse Act does not provide for civil causes of action under the facts alleged by the Plaintiff.

The Computer Fraud and Abuse Act ("CFAA") does not create a civil cause of action for the allegations of the Plaintiff's complaint.  Civil causes of action under the CFAA may only be

pursued for conduct involving one of the factors set forth in clauses (i) through (v) of subsection (a)(5)(B) of the CFAA.  18 U.S.C. § 1030(g).

Of the five clauses in subsection (a)(5)(B), only one is even arguably applicable, clause (i), which reads: <u>loss</u> to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value.  18 U.S.C. § 1030(a)(5)(B)(i)(emphasis added).[7]

"Loss" (which is required for civil recourse) is defined in the CFAA as the following:

> (11) the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred <u>because of interruption of service</u>; and...

18 U.S.C. § 1030 (e)(11)(emphasis added).  See *Resdev LLC v. Lot Builders Ass'n, Inc.,* 2005 WL 1924743 (M.D. Fla. 2005)(value of trade secret information allegedly taken from plaintiff's computer was not a "loss" protected by the CFAA because there was no

---

[7]The other clauses include: (ii) modification or impairment of medical diagnosis, treatment or care; (iii) physical injury to any person; (iv) threat to public health or safety; and (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense or national security.

interruption of service); *Cenveo Corp. v. CellumSolutions Software*, 504 F.Supp. 2d 574 (D. Minn. 2007)(allegation that defendant accessed plaintiff's computer system to obtain confidential and proprietary information does not constitute a "loss" under the CFAA where there was no interruption of service); and *Nexans Wires, S.A. v. Sark-USA, Inc.*, 319 F.Supp. 2d 468, 477-78 (S.D.N.Y. 2004)(because CFAA limits "loss" to costs incurred because of an interruption in service, loss of business due to defendant's use of proprietary information is not covered by the CFAA).

The Plaintiff in this cause seeks consequential damages for Gilco's alleged participation in the unauthorized access of the Plaintiff's computer-stored information.  However, the CFAA, as stated above, only provides such a cause of action when the consequential damages were incurred as the result of an interruption of service.  The Plaintiff has not alleged it suffered an interruption of service, nor has the Plaintiff alleged any other circumstances set forth in the definition of "loss."  Because the Plaintiff has not alleged the necessary prerequisites to maintaining a civil suit under the CFAA, Gilco respectfully submits that personal jurisdiction should not be predicated upon this statute.

**E.   The Plaintiff has failed to put forth a prima facie case**
**that any element of "inducement" occurred within the**
**State of Mississippi.**

It is not wholly clear from this section of the Response whether the Plaintiff intended to argue that the "inducement of Xu to breach his duties to keep Shannon's trade secrets confidential and secret" was performed by Ms. Chen or Gilco or both.  In the "due process" section of the response, the Plaintiff does seem to clarify that Ms. Chen allegedly induced Mr. Xu to breach his duties to the Plaintiff.

With respect to any inducement Claire Chen offered Gary Xu, such obviously did not occur within the state of Mississippi.  Chen and Xu are married to each other and long-time residents of Shanghai, China.  It is undisputed that neither Ms. Chen nor Mr. Xu have ever been to Mississippi.  It is therefore quite clear that if such inducement occurred, it occurred where both Ms. Chen and Mr. Xu were actually located - in China.  Again, what is proscribed by tort is certain actions.  Effects themselves are not sufficient.

The Plaintiff has not set forth any evidence that Gilco either committed a tort in Mississippi or that it was doing business in Mississippi such that the requirements of this State's long arm statute have been satisfied.  At best, the Plaintiff has alleged it felt the consequences of acts taken in China and the fifth Circuit has repeatedly recognized that economic consequences is not the equivalent of a tort itself. In the absence of such evidence, the

Plaintiff has failed to meet its burden of establishing a prima facie case for this Court to exercise personal jurisdiction over Gilco.

## V.   DUE PROCESS REQUIREMENTS PRECLUDE EXERCISING PERSONAL JURISDICTION OVER NONRESIDENT DEFENDANT GILCO

The Plaintiff has failed to establish the application of the long arm statute and therefore the Court need not continue to a due process analysis.  However, even if the Plaintiff had met its burden with respect to the statute, exercising personal jurisdiction over Gilco in this cause would violate constitutional due process protections.

Due process analysis has two prongs: (1) the defendant has purposely availed itself of the benefits and protections of the forum state by establishing minimum contacts there such that a defendant could reasonably anticipate being haled into court there; and (2) exercising personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice. *Central Freight Lines, Inc. v. ATA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

Minimum contacts can be established through either general or specific personal jurisdiction.  General jurisdiction is established through the defendant's continuous and systematic conduct within the forum.  *Id.* at 381.  The Plaintiff's Response only alleges that specific, not general, personal jurisdiction

exists in this case, therefore a discussion of "continuous and systematic conduct" is unnecessary.

Specific jurisdiction has three sub-requirements: (a) the defendant purposely directed its activities to the forum or purposely availed itself of the privilege of conducting activities there; (2) the cause of action arises out of or results from the defendant's forum-related conduct; and (3) exercise of personal jurisdiction would be reasonable and fair. *Seiferth v. Helicopteros Atuneros, Inc.* 472 F 3rd 266, 271 (5th Circuit 2006).

## A.   The Plaintiff has failed to establish Gilco purposefully directed any activity at the State of Mississippi.

The Plaintiff bases its conclusion that specific personal jurisdiction exists upon two things: (1) the prior course of dealing between the Plaintiff and Gilco; and (2) the intentional acts alleged in the Complaint.  In support of this, the Plaintiff relies upon the contents of the affidavit of Mr. Gerrard.

With respect to the purported course of dealing between the Plaintiff and Gilco, the Plaintiff skips over necessary due process elements. The Plaintiff correctly recites the three-step analysis. However, although citing the standard correctly, the Plaintiff fails to recognize that any prior course of business dealing between itself and Gilco did not give rise to the allegations of the Complaint.  There is no evidence put forth whatsoever that any prior dealings between J.T. Shannon (which again wrongly assumes

-23-

this is the correct company) and Gilco were anything other than discrete business transactions which were concluded to the satisfaction of both parties.   Therefore the Plaintiff cannot establish that the course of dealing satisfies the three-part analysis for due process requirements.

Gilco again points out that those discrete business transactions were initiated by the Plaintiff, not Gilco, as discussed above in Section III of this Rebuttal. It has long been the rule of law in the Fifth Circuit that the <u>plaintiff's</u> solicitation of business from a nonresident defendant does not subject the defendant to the jurisdiction of the plaintiff's home state. In *Loumar, Inc. v. Smith,* 698 F.2d 759 (5th Cir. 1983), the court found the exercise of personal jurisdiction over a Maryland defendant was improper where it had minimal contacts with the State of Texas, the plaintiff initiated the business relationship by contacting the defendant by phone and the defendant only shipped its goods to the plaintiff in Texas*.* These facts are substantially identically to those in the present case.  The Plaintiff initiated business with Gilco and Gilco only shipped goods here.

The Plaintiff, therefore, cannot satisfy the first element of specific personal jurisdiction, that the non-resident defendant purposely directed its activities towards the forum state.

The Plaintiff next contends the "purposeful activity" requirement is met because of "the intentional acts of Gilco's

-24-

agent, Chen, which induced Xu to breach his contractual and common law duties owed to Shannon, together with the accessing and misappropriation of Shannon's confidential and trade secret information residing on its servers in Horn Lake, Mississippi …"

With respect to any inducement Claire Chen allegedly offered Gary Xu, as discussed above, such obviously did not occur within the state of Mississippi and was not directed at Mississippi.  It was directed at a resident of China by a resident of China and, according to the Plaintiff, with the intent to affect trade in China, not Mississippi.  That the Plaintiff fortuitously maintains its server in Mississippi is insufficient to establish purposeful activity by Gilco within this forum.

In asserting that Gilco's alleged malfeasance was directed toward Mississippi, the Plaintiff specifically relies upon the affidavit of its employee, Mr. Garrard.  Mr. Garrard's affidavit contains inadmissable conclusory statements, speculations and opinions unsupported by personal knowledge, and those portions are the subject of a separately filed Motion to Strike.

Furthermore, as briefly mentioned above, Mr. Garrard's affidavit uses Ms. Chen and Mr. Xu interchangeably ("Claire Chen and/or Gary Xu").  In addition to being merely speculative, Mr. Garrard overlooks that Mr. Xu was Shannon's own agent, had authorization to access the Plaintiff's network and obtain the Plaintiff's business data.  Thus, if Mr. Xu accessed his employer's

server as alleged in Mr. Garrard's affidavit, it was part of his normal duties to do so.

Whether or not Mr. Xu made proper <u>use</u> of information obtained through such authorized access is not relevant to the jurisdictional issue (nor has it been established).

The heart of the Plaintiff's argument that purposeful activity was directed at Mississippi is that its computer server, located in Mississippi, was improperly accessed.  Respectfully, the Plaintiff is attempting to reframe the allegations of its Complaint to make this a "computer case" so as to find a "hook" to bring it within the holdings of the internet cases cited in its Response.  In reality, the alleged improper access of the Plaintiff's server is not the real conduct of which Gilco stands accused but one alleged fact of marginal significance to the real claim.

A fair reading of the Complaint alleges Gilco interfered with the Plaintiff's China and Asia customers.  It does not allege any physical impact or interference with the server itself or manipulation of the company information, an essential basis for each court's holding in the internet cases cited by the Plaintiff.

The Plaintiff primarily relies on four cases in support of its position, *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp. 2d 604 (E.D.Va. 2002), *Internet Doorway, Inc. v. Parks,* 138 F.Supp. 2d 773 (S.D. Miss. 2001), *Premedics, Inc. v. Zoll Med. Corp.*, 2007 WL

-26-

3012968 (M.D. Tenn. 2007) and *U.S. v. Ivanov*, 175 F.Supp. 2d 367 (D.Conn. 2001) .

In *Verizon*, the defendants were alleged to have sent so much spam through the Plaintiff's servers that it caused an actual slow down of the servers' processing capacities.   In the due process analysis, that court specifically noted, "<u>In the case of injuries to computer systems</u>, various courts have concluded that the use of a computer or network service located in a particular state creates sufficient contacts to establish personal jurisdiction." *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp. 2d 604,617 (E.D.Va. 2002)  (emphasis added, internal quotation marks removed).

In the instant matter, there is no injury alleged to the Plaintiff's computer system, no impact whatsoever.   In the absence of any such injury, this case is removed from the class of cases *Verizon* addresses and does not here apply.

The same may be said of *Premedics, Inc. v. Zoll Med. Corp.*, 2007 WL 3012968 (M.D. Tenn. 2007).   In that case, the nonresident defendant did not merely access the plaintiff's confidential data base, the defendant manipulated and changed the content of the server by creating a false "test account" so that it would continue to receive information about the system even after the direct improper access ceased.   Again, there is no such physical impact alleged by the Plaintiff in this cause.

*Internet Doorway* was a case where the nonresident defendant was found to have minimum contacts with the forum because she specifically directed email solicitations for a pornographic web site to Mississippi residents while manipulating the sender information so the email would appear to originate from the plaintiff, a Mississippi company.  The alleged misuse was both the manipulation of the email and the solicitation for pecuniary gain which specifically targeted Mississippi residents.  *Internet Doorway, Inc. v. Parks,* 138 F.Supp. 2d 773,779 (S.D. Miss. 2001).

Such was clearly not the case here.  There was no manipulation of data to associate Shannon Lumber with a pornographic web site and no solicitation for direct pecuniary gain aimed at Mississippi residents.  Again, each and every action the Plaintiff alleges was taken by anyone in this cause occurred in China with the intent to gain an advantage in China, not Mississippi.

The Plaintiff's reliance upon *U.S. v. Ivanov*, 175 F.Supp. 2d 367 (D.Conn. 2001) is also misplaced.  That case quite obviously was addressing the extraterritorial reach of the criminalizing section of the CFAA, and has no application in the civil context.

It is also irrelevant that, as the Plaintiff claims, a link to Ms. Chin's Google mail account was saved to Shannon's laptop computer.  Such a link leads to Google mail, not the Plaintiff's server in Mississippi.  The Plaintiff has again failed to carry its burden of establishing a prima facie case of minimum contacts with

the forum state.

**B.   In the absence of minimum contacts, the Plaintiff cannot establish any cause of action arose from those nonexistant contact.**

As discussed above, it is necessary not only that a nonresident defendant have minimum contacts with the forum state, but also that the causes alleged by the resident plaintiff arose from or resulted from those forum-related activities.

As also discussed above, Shannon has failed to establish such minimum contacts, and can therefore not establish the required nexus.   This case is about competitors in China, not in Mississippi.

**C.   The Plaintiff has failed to establish that exercising personal jurisdiction over Gilco does not offend traditional notions of fair play and substantial justice.**

An analysis of whether exercising personal jurisdiction over Gilco comports with traditional notions of fair play and substantial justice is not reached unless the Plaintiff has put on sufficient evidence of minimum contacts.   The Plaintiff here has not done so.   Even if there were such minimum contacts, due process requirements still would preclude exercising personal jurisidiction over Gilco.

The Plaintiff appears to be taking the position that because it has made allegations against various persons, then the allegations alone are sufficient to meet its burden of making a

prima facia case for personal jurisdiction.  Such a notion clearly offends the requirements of due process, since, as a practical matter, any plaintiff anywhere could make a claim against any organization and argue that having made the claim, a far flung business entity is required to come to it to litigate, regardless of the merits of the claims.

Such a position clearly conflicts with the due process requirement that personal jurisdiction cannot offend traditional motions of fair play and substantial justice and the Fifth Circuit has recognized this reality.

The factors to determine whether exercising Personal jurisdiction constitutionally offends substantial justice and fair play are: (1) the burden upon the defendant; (2) the forum state's interest in the litigation; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolutions of controversies; (5) the state's shared interest in furthering fundamental social policies.  *Central Freight Lines,* 322 F.3d at 384.

The actual burden upon Gilco to defend this suit in Mississippi is great.  Gilco is a privately held West Virginia company.  Litigation in Mississippi would require many of the principals to be absent from not only the business but the state for at least the duration of trial.  The Court recognized in its initial case management order that this case is complex.  Trial is

not likely to be brief and it is unreasonable and burdensome in the extreme to jeopardize a going concern for the Plaintiff's choice of personal convenience.

The due process burden on Gilco to defend suit in Mississippi is also quite substantial.  Gilco is not alleged to have taken any action in Mississippi itself, but to have conspired with others in a foreign country through its agent, Claire Chen.  Ms. Chen has never been in Mississippi and all her purported actions (which are, of course, completely denied) occurred in China.  Having taken no action in Mississippi, conducted business in Mississippi or entered a contract here, Ms. Chen would not be subject to personal jurisdiction in Mississippi.  Gilco submits it perverts due process protections to suggest that it can reasonably be haled into court in Mississippi despite the attenuated connection to the forum via a foreign country when the alleged actual tortfeasor, Claire Chen, could not.

Although the Plaintiff asserts it is a resident of Mississippi, this state has little other interest in this litigation.  All activities allegedly occurred in China, conducted either by residents of China or in concert with residents of West Virginia.  Chinese law may well apply. The allegedly intended outcome was to affect trade in China and Asia. There is no public policy peculiar to Mississippi at stake.  Presumably all states

have an equal interest in the general proposition that litigation should be expeditious and fair.

While litigating in Mississippi would certainly be more convenient for the Plaintiff, that consideration alone does not satisfy due process requirements.  That is particularly so where, as here, the Plaintiff has otherwise failed to carry its burden of establishing a prima facie case for personal jurisdiction.  The Plaintiff would certainly be able to obtain effective relief from the federal courts of another jurisdiction.

Likewise, the judicial system's interest in an efficient resolution of this controversy can be satisfied in another jurisdiction.  It would be an absurd application of due process for the Plaintiff to be allowed to continue litigating in Mississippi simply because the case has already been filed here, particularly since Mississippi law would not be applied and the Plaintiff lacks standing to pursue the litigation it initiated.

In the absence of any evidence at all to establish a prima facie case of personal jurisdiction, exercising personal jurisdiction over Gilco does not comport with constitutional requirements.  It is insufficient that the Plaintiff and its server happen to reside in this state. *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988)( no specific personal jurisdiction exists over nonresident defendant where "defendant's contact with the forum rests solely on the mere fortuity that the

-32-

plaintiff happens to be a resident of the forum." (Internal quotations omitted.)See also, *Patterson,* 764 F.2d at 1147.

### **CONCLUSION**

It cannot be reasonably said that Gilco Lumber anticipated being haled into court in the State of Mississippi for something its employee or the plaintiff's employee allegedly did in China. Plaintiff understandably wants, for this moment at least, to disregard what allegedly happened in the China market, and to instead try to make this a case about its computer server, in hopes that this slim thread will be enough to attach jurisdiction. But as the foregoing analysis has shown, the Plaintiff can satisfy neither Mississippi's "long arm" statute nor due process with this weak and unsupported argument. Fundamental notions of fairness demand that this Court refuse to exercise jurisdiction over the Defendant. The Defendant therefore respectfully asks that this Court refuse to exercise jurisdiction over it and dismiss this action.

Respectfully Submitted,


GILCO LUMBER, INCORPORATED


BY: /s/ Michael F. Myers
EDWARD J. CURRIE, JR. (MSB #5546)
MICHAEL F. MYERS (MSB #3712)


-33-

OF COUNSEL:

Currie Johnson Griffin Gaines & Myers, P.A.
1044 River Oaks Drive
Post Office Box 750
Jackson, Mississippi  39205-0750
(601) 969-1010; (601) 969-5120 (fax)

## CERTIFICATE OF SERVICE

        I hereby certify that I have on this the 9th day of April, 2008, electronically filed the above and foregoing with the Clerk of Court using the CM/EFC system, which will send notification of this filing to the undersigned and to the following:

        Thomas A. Wicker
        Holland, Ray, Upchurch & Hillen, P.A.
        322 Jefferson Street
        Post Office Box 409
        Tupelo, Mississippi 38802-0409

        SO CERTIFIED this the 9th day of April, 2008.


                                /s/ Michael F. Myers
                                MICHAEL F. MYERS