# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

| | |
|---|---|
| J.T. SHANNON LUMBER COMPANY, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GILCO LUMBER, INCORPORATED, )<br>JIANLIANG "GARY" XU, CLAIRE )<br>CHEN, and )<br>JOHN DOES 1, 2 and 3 )<br>)<br>Defendants. )<br>) | CASE NO. 2:07-cv-119<br>Oral Argument Requested |

## **MOTION TO RECONSIDER**

Comes now the Plaintiff, J. T. Shannon Lumber Company, Inc. ("Shannon"), by and through counsel and moves the Court to reconsider its Order quashing the subpoenas duces tecum issued and served upon Google, Inc., Yahoo!, Inc. and Microsoft Corporation (Docket No. 124). In support of its Motion, the Plaintiff respectfully submits that, for the reasons set forth herein, the Court should rescind its Order and direct the Defendant, Gilco Lumber Incorporated ("Gilco"), to consent to the release of the information from the listed email providers and require its employees to do so as well.

First, Gilco, should have produced the emails Shannon requested, wherever the emails were located or stored, without intervention from the Court. Second, by requiring Gilco's employee, Chen, to consent to the production of the emails under the threat of sanctions, this Court avoids any issue of the Storage Communications Act. Two simple analogies are instructive. If an employee were to place Gilco documents responsive to Shannon's discovery under her bed at her home, she would have a privacy right in her home. The employer, however, would still be required to produce those responsive documents, especially if the employer could simply ask the

employee to bring them back to work. If the employer failed to produce such documents, a court would impose severe sanctions. Another example is medical records that are protected by the Health Insurance Portability and Accountability Act (HIPAA), a federal act which provides privacy rights to a person's medical records. While the records are subject to a federal privacy right, parties in litigation are forced every day to release such records under a threat of court sanctions. The same logic applies to web based email used for business purposes. Gilco would not and should not be protected from sanctions for failing to produce those documents despite the fact that federal law may not permit them to be subpoenaed.

The Court based its ruling on two factors. First, the Court held the subpoenas are invalid on their face under the Stored Communications Act of 1986, 18 U.S.C. § 2701-03 (2006); *In re Subpoena Duces Tecum to AOL,* , 550 F. Supp.2d 606, 611 (E.D. Va. 2008). Second, despite the failure of the email providers to file a motion to quash Shannon's subpoenas, the Court held that the subpoenas are overly burdensome on the email providers.

With regard to the first issue, Shannon urges the Court to adopt the rationale employed in *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 88 (Calif. 6th Ct. App. 2006), and direct Gilco to consent to the release of the information. This would be justified for several reasons. First, Shannon respectfully submits that the Court erred in finding, with no evidentiary basis, that the "documents sought by the plaintiff are the personal documents and the details of the email accounts of the defendant employees." (Docket No.124, page 2). The subpoenas in question did not ask for any email accounts belonging to Claire Chen or the other employees of the defendant; rather, the subpoenas specified particular email accounts derived from a forensic examination of Shannon's laptop and desktop computer in Shanghai, China. The only evidence before this Court, in the form of affidavits and documentary evidence, is that these email accounts were not personal, but were accounts established for the purpose and used by the account holders for the purpose of

2

conducting Gilco's business in China. Moreover, Clare Chen used her Google email for business purposes, specifically, for Gilco's business. On December 28, 2006, Claire Chen sent an email from her Gmail account stating that "[m]y company's email cannot be accessed because some cables were destroyed by Taiwan's earthquake. Now I am using clairecheny@gmail.com temporarily."[1] See Exhibit 1 (Docket No. 126-3) to Third Affidavit of Jim Garrard (Docket No. 126-2). In addition, as shown by the emails attached to Jim Garrard's affidavit, Chen regularly used her private email address to conduct Gilco's business, there is *no* evidence to the contrary.

There is no evidence or claim[2] that any content in the email accounts at issue contain any communications of a personal nature as opposed to the purely commercial use on behalf of Gilco. To the contrary, the Supplemental Affidavit of Jim Garrard (Docket No. 96-2), as well as his Third Affidavit (Docket No. 126-2), states clearly that the emails he was able to access using the stored username and password of Claire Chen on Shannon's desktop computer were of a purely commercial nature. Another example of the email content submitted with Shannon's Reply in support of its Motion to Compel shows that Claire Chen sent a pro forma invoice to a customer of Gilco for signature. (See, Docket No. 126-8)[3]. There is no indication that Claire Chen used this account for personal use; instead, indisputably, she used the account to do Gilco's business and to misappropriate Shannon's trade secrets for the benefit of Gilco while working on Shannon's computers.

---

[1] Based on the emails Shannon and its computer forensic expert recovered from Shannon's computers formerly located in Shanghai, China, we know that Chen used emails accounts other than Gilco's to conduct Gilco's business for a significant period of time and is possibly continuing to use such accounts.

[2] Gilco has been very careful, in contending that the email accounts are "personal", not to support this with affidavit testimony, and has even admitted that the information sought "presumably relates directly to Gilco's business information and interests". (Docket No. 111, page 2).

[3] Other examples attached to Shannon's Reply in support of its Motion to Compel include an email from Chen to Scott England, Gilco's Vice-President for Sales, arranging for England's schedule on his trip to China (Docket No. 126-5), emails from Chen to Scott England and Samantha Mann at Gilco in which she submits her expense reports (created on Shannon's computers) (Docket Nos. 126-4 and 126-7, and an email from Chen to Gary Xu at yet another Gmail account, asking for his assistance in modifying a pro forma invoice for Gilco at a time when he was still employed by Shannon.

Second, as shown by the Declaration of Robert Knudsen, Shannon's forensic expert, Claire Chen not only used and accessed Shannon's computers in Shanghai and network servers in Horn Lake, Mississippi, she deleted vast numbers of documents, including email, when Shannon discovered this use, but before Shannon could secure possession of the computers and transport them back to the United States. (Docket No. 98, and the hundreds of pages of deleted files listed in attachments thereto at Docket Nos. 98-15 through 98-24; see also, Supplemental Affidavit of Jim Garrard, Docket No. 96-2, ¶¶ 10 and 12). To permit Gilco to hide behind its employee's account, given these circumstances, would be to reward Gilco and Chen for deliberately destroying evidence that resided on Shannon's computers. Again, examples of the types of documents deleted are listed in Shannon's Reply in support of its Motion to Compel (Docket No. 126) and in the original Declaration of Robert Knudsen (Docket No. 98), an employee of Global Digital Forensics, Shannon's computer forensics expert, and are incorporated by reference. It is clear that Chen created and was using the accounts in question for the sole purpose of conducting Gilco's business.

Third, because the evidence – the only evidence before the court – demonstrates that the email accounts in question were used by Chen for the sole purpose of conducting Gilco's business, in the clear scope of her employment with Gilco, the email in question belongs to and is within the control of Gilco. The information stored with the email providers (if it has not been deleted as were the files, including emails, that Chen created on Shannon's computers) is not personal information that would belong to Chen, but information of a business nature concerning Gilco's sales of lumber in China (sales that were accomplished using information, customer lists and forms stored on Shannon's servers in Horn Lake). The information belongs to Gilco (albeit through unlawfully converting information that belonged to Shannon), and this Court is therefore in a position to require Gilco to consent to its release. This in keeping with long standing and well-

4

established precedent that a party cannot avoid discovery by claiming that it does not have possession of materials sought if that party has the means to obtain the information. A party may be required to produce documents even if it only controls the persons who are able to obtain the documents; furthermore, ***a defendant cannot evade production of documents by conveniently claiming a lack of access when the documents are sought for discovery purposes***. *New York ex rel. Boardman v. National R.R. Passenger Corp.*, 233 F.R.D. 259, 267 (N.D. N.Y. 2006) (emphasis added). Gilco and Chen have admitted that Chen is Gilco's employee. The information stored by the email providers under Chen's accounts is information in which the only property rights would be those of Gilco. Gilco has every right to require Chen to consent to the release of Gilco's property and to the release of Shannon's property, i.e., its trade secrets and proprietary information pilfered from Shannon's servers.

Fourth, from a public policy perspective, the ramifications of the Court's Order are enormous. If sustained, no matter how relevant, web based email accounts will be turned into the equivalent of "Swiss bank accounts." immune from discovery. Based upon this ruling, a nefarious business could conduct unlawful activity and simply tell its employees to conduct such activity using private email accounts to thwart discovery completely. If Gilco told its employees to hide incriminating documents in private, offshore accounts, this Court could still direct Gilco to order them to retrieve the documents or face sanctions.[4] To permit Gilco to successfully object to the retrieval of this information undoes this Court's Order in September, 2007, in which the Court directed the parties "to take all necessary steps to reasonably assure preservation of discoverable

---

[4] Another district court had this to say about an American company that resisted turning over "foreign" documents:

> Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad. If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents. Defendant has improperly resisted the orders of this court.

*Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (D.C.N.Y. 1984).

5

information as contemplated by the Rules and this Order". (Docket No. 16, Page 2). The only reasonable inference to be drawn from the evidence currently before this Court is that the email accounts in question were created specifically and exclusively for use in conducting Gilco's lumber business in China. It is apparent that Gilco and its agent, Chen, engaged in wholesale piracy not only of Shannon's electronically stored information, but of the very hardware owned by Shannon. As shown by the listing of documents deleted by Gilco's agent, Chen, she used Shannon's computers and servers to generate and store Gilco's sales budgets, pending orders, expenses related to sales, emails, invoices, shipping data[5] – in fact, Gilco's entire operations were conducted using Shannon's data and hardware until Chen deleted the information.

In connection with another Gmail account listed in Shannon's subpoenas – "garyxu001" – Chen is sending her husband, Gary Xu, Shannon's employee, an invoice and asking that he "please help me add the consignee and notify party to PI [Pro forma Invoice] from their shipping instruction". (Docket No. 126-6). This is direct evidence that Chen, an employee of Gilco, not only pirated Shannon's invoice form, but continued to induce Shannon's employee, Gary Xu, to breach his contractual and fiduciary duties by asking for his assistance in filling out the purloined form.

This fact relates directly to the second issue on which the Court relied in quashing the subpoenas – that the subpoenas were overbroad and would constitute an undue burden on the email providers to which the subpoenas were directed. Shannon respectfully submits that, based on the evidence already before the Court, the subpoenas are specifically targeted to produce further evidence showing the pattern of conduct of the defendants. Again, there is no evidence that the requests are unreasonable or burdensome. In fact, Microsoft's letter to Shannon's counsel indicates that the subpoenas are not unreasonable or burdensome for the Internet Providers. See

---

[5] The list of deleted documents also clearly indicates that the time period in question begins sometime in 2005 and continues through July, 2007.

6

Second Declaration of Robert Knudsen ("Second Declaration") attached as Exhibit 1 and Letter from Microsoft attached as Exhibit "C" to the Second Declaration. For example, Microsoft charges a minimal fee of only $ 35 dollars for downloading the emails contents of an entire email account onto a CD-ROM and only $ 15 dollars for each additional email account. See Second Knudsen Declaration and Exhibit "C" to Second Knudsen Declaration. Microsoft states that these costs reflect its actual costs incurred in responding to such requests. *Id.* Additionally, these CD-ROMS are normally electronically searchable so Gilco could easily search the emails for responsive documents. See Second Knudsen Declaration. Google and Yahoo should also be able to download emails to CD-ROMS, and such a process would not burden either Google or Yahoo because they do it every day. See Second Knudsen Declaration. Finally, the requests are not overbroad because the only accounts identified and subpoenaed were those gleaned from a forensic examination of Shannon's computers. That is, Shannon only asks for information concerning accounts that the evidence shows were utilized to conduct Gilco's business on Shannon's computers.

The Court's statement that "the subpoenas request all of the contents of the subscribers e-mail accounts regardless of the content, much of which is most likely not related to the instant case" is simply not supported by the evidence in this case. There is no evidence – none – that any of the email content sought does not relate directly to this case. To the contrary, the only evidence before the court is that the contents relate specifically and exclusively to the conduct of Gilco's business in China using the only data and hardware that we are aware of: Shannon's computers and network servers. The account information, session times, method of payment, volume of mail and connection logs will enable Shannon's forensic experts to match up the accounts with the session dates and times when Shannon's network servers were accessed. This information will

7

also assist in determining whether any other computers besides Shannon's were used to access the email accounts in question.

There is no evidence before the Court that Shannon's request is for "an unlimited number of documents". Even assuming heavy email usage over a two year span of time, the documents in question would be of a finite number, unlikely to exceed more than a thousand to two thousand documents. Even if this number were to be exceeded ten times the data could be exported electronically and would be far less burdensome to produce than hard copies of the same number of documents. Inasmuch as there is absolutely no *evidence* that any of the documents sought pertain to purely personal or privileged communications, there would not even be the burden of reviewing the documents.

It is important to note that the email providers themselves have advanced no objection to producing the information based on undue burden. This Court correctly held that "the moving party has the burden of demonstrating that compliance with the subpoena would be unreasonable and oppressive. *E.A. Renfore & Co., Inc. V. Moran*, 2007 WL 41276906 (N.D. Miss 2007), citing *Wiwa v. Royal Dutch Petroleum co.*, 392 F.3d 812, 818 (5th Cir. 2004)." Gilco has not met that burden. Far from a "fishing expedition", Shannon's requests relate only to the email accounts and time period identified from an examination of its own computers. Moreover, the requests relate to clear evidence that Chen wrongfully deleted the documents stored on Shannon's computers. Given the fact that Gilco now claims that it has no record of communication with any of the accounts in question, and Chen has deleted them from the computers that she was using, the only other place to look is with the email providers used by Chen and Gilco to pursue their business: Google, Yahoo! and Microsoft. If Gilco refuses to consent to the release of its information, and refuses to direct Chen to release the information in question, then Gilco should be sanctioned and

the Court should hold that the presumption is that the information destroyed by Gilco would support a finding of not only jurisdiction, but liability.

Based upon the foregoing argument and authority, the Plaintiff respectfully requests that the Court reconsider its Order of August 14, 2008, and direct Gilco to consent to the release of the subpoenaed documents and further direct Gilco to require its employees to do so as well.

    Respectfully submitted,

    HOLLAND, RAY, UPCHURCH & HILLEN, P.A.

    /s/ Thomas A. Wicker
    THOMAS A. WICKER, MSB #7182

HOLLAND, RAY, UPCHURCH & HILLEN, P.A.
322 JEFFERSON STREET
POST OFFICE DRAWER 409
TUPELO, MS 38802-0409
(662) 842-1721

    GLANKLER BROWN, PLLC

    /s/ Oscar C. Carr, III
    OSCAR C. CARR, III, Pro Hac Vice

GLANKLER BROWN, PLLC
1700 COMMERCE SQUARE
MEMPHIS, TN 38103
TELEPHONE: (901) 525-1322

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I, Thomas A. Wicker, do hereby certify that a true and correct copy of the foregoing has been forwarded, via electronic mail, through the Court's Electronic Case Filing System, to the following:

John W. Simmons
jsimmons@kiesewetterwise.com

Brenda R. Nelson
bnelson@kiesewetterwise.com

Michael Franklin Myers
mmyers@curriejohnson.com

Edward Jones Currie, Jr.
ecurrie@curriejohnson.com

Allison P. Fry
afry@curriejohnson.com

Alex F. Lankford, III
alankford@handarendall.com

Pope S. Mallette
pmallette@mayomallette.com

Oscar Clark Carr, III
ocarr@glankler.com

R. William Sigler
bsigler@kayescholer.com

      This, the 19th day of August, 2008.

                                                          /s/ Thomas A. Wicker
                                                         THOMAS A. WICKER