**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**J. T. SHANNON LUMBER COMPANY, INC.**                                        **PLAINTIFF**

**V.**                                                                                             **CAUSE NO.: 2:07CV119-SA-SAA**

**GILCO LUMBER, INC., et al**                                                             **DEFENDANTS**

**MEMORANDUM OPINION**

Defendant Gilco Lumber, Inc., ("Gilco") has filed a Motion for Summary Judgment [290] under seal. J.T. Shannon has also filed a Motion for Summary Judgment under seal. After reviewing the motions, responses, exhibits, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Gilco Lumber is in the business of marketing and selling hardwood lumber. Gilco sold their hardwood lumber through the J.T. Shannon Lumber Company ("J.T. Shannon"), among other non-exclusive agents. In early 2003, J.T. Shannon executives directed Richard Barrett, its Vice-President of Sales, to take steps necessary to enter J.T. Shannon into the Asian Market. J.T. Shannon hired Xiuling "Gary" Xu and opened a Shanghai office in April of 2003. Gilco's products were then sold through J.T. Shannon to foreign buyers in the Chinese and Asian markets. J.T. Shannon procured orders for hardwood from Chinese buyers and offered those sales to Gilco at a price enabling J.T. Shannon to earn a four to five percent commission. Until 2006, the majority of lumber purchased for Asian sales by J.T. Shannon was sourced from Gilco.

In early 2005, Scott England, sales manager for Gilco, traveled to China and toured the Samson/Lacquercraft furniture manufacturing plant, J.T. Shannon's largest Chinese customer, with Richard Barrett. Thereafter, Gilco's Chairman, James Harless flew to China and visited the same plant in July of 2005. Gary Xu attended both Samson tours by Gilco personnel.

Around this time, Scott England and Richard Barrett engaged in some discussion of a joint venture between J.T. Shannon and Gilco for an expanded role in the Asian market. Under the proposal, Gilco would procure more dry kilns in order to boost supply and would sell exclusively through J.T. Shannon's operation in Shanghai. England and Barrett contemplated that this venture would enable both Gilco and J.T. Shannon to increase their sales and profits in the Asian market. In furtherance of this joint venture, Barrett visited Harless in West Virginia to convince him to invest in the proposal. Both England and Harless assumed that Barrett was in West Virginia with the authorization and on behalf of J.T. Shannon Lumber Company. After the June 2005 meeting in West Virginia, J.T. Shannon executives informed the parties that they were unwilling to go forward with the joint venture.

Barrett thereafter resigned as J.T. Shannon's Vice-President of Sales effective February 10, 2006. The relationship between Gilco and J.T. Shannon was also strained as a result of the abandoned negotiations. In March of 2006, Gilco announced its intention to increase its prices, and J.T. Shannon, unhappy with some delays in Gilco shipments, terminated the remaining orders.

On February 22, 2006, England sent a letter to Gary Gone, purchasing agent for Samson/Lacquercraft, informing him of Gilco's decision to begin selling directly to that furniture manufacturer. England traveled to China for the purpose of hiring Gary Xu, J.T. Shannon's Asian sales representative, to work with Gilco. Xu informed England that he had an employment contract with J.T. Shannon with a no-compete clause. When asked for recommendations for a suitable sales representative, Xu commented that Gilco may be interested in hiring Claire Chen, Gary Xu's wife. England met with Chen and hired her to be Gilco's Asian sales representative based in Shanghai, China.

2

On a routine visit to J.T. Shannon's Shanghai office in June of 2007, Frank Owens, Richard Barrett's successor, discovered a "Gilco Pending Orders" icon on the J.T. Shannon desktop computer and printed it. When confronted with this evidence, Gary Xu attempted to prevent Owens from accessing the information, grabbed the printed document before Owens could seize it, and later deleted several files from the J.T. Shannon desktop computer. The deleted files were reconstructed by J.T. Shannon in Horn Lake, Mississippi, and form the basis of this lawsuit. J.T. Shannon also accessed Claire Chen's gmail account, the username and password of which were saved on the desktop, and found at least one email between Gary Xu, as a J.T. Shannon employee, and Claire Chen, a Gilco employee, that J.T. Shannon deemed violative of the no-compete clause. During discovery in this case, a search of Gilco's computers revealed a document emailed from Richard Barrett to England on February 9, 2006, one day prior to Barrett's voluntary resignation from J.T. Shannon. The document detailed steps to be taken by Gilco to set up a Chinese sales office.

J.T. Shannon filed an amended complaint alleging the following against Gilco[1]: intentional interference with contractual and business relationships existing between J.T. Shannon and Xu; wrongful inducement of Barrett and Xu to breach their contractual and fiduciary duties owed as a result of their employment contracts; fraudulent concealment of Xu as Gilco's agent; conspiracy to convert proprietary trade secret information and business equipment; gross and intentional conduct justifying the imposition of punitive damages; misappropriation of a trade secret in violation of the Mississippi Uniform Trade Secrets Act; violation of the Computer Fraud and Abuse Act; and

---

[1] Also named as Defendants are Claire Chen, Gary Xu, Scott England, and James H. Harless, who have been dismissed by prior orders of this Court. See [144], [177], and [310]. All claims against Richard Barrett has been severed and transferred to the United States District Court for the Western District of Tennessee [54], pursuant to the forum selection clause in his employment contract.

misappropriation, conversion, and trespass.

Gilco filed a Motion for Summary Judgment contending that it is entitled to judgment as a matter of law on Plaintiff's claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc.,

530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

A. *Mississippi Uniform Trade Secrets Act*

The Mississippi Uniform Trade Secrets Act ("MUTSA"), Mississippi Code Annotated Section 75-26-1, *et seq.*, creates a cause of action for the misappropriation of another's trade secrets when those secrets are accessed by improper means. A "trade secret" is information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. § 75-26-3(d). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Miss. Code Ann. § 75-26-3(a). Moreover, a defendant must have "misappropriated" the alleged trade secret in order to be liable under the MUTSA. Misappropriation involves:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> 1. Used improper means to acquire knowledge of the trade secret; or
>>
>> 2. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

> a. Derived from or through a person who had utilized improper means to acquire it;
>
> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or
>
> 3. Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Miss. Code Ann. § 75-26-3(b).

There are essentially two prongs a plaintiff must establish in order to prove the existence of a trade secret in Mississippi. To prove the first prong, the alleged trade secret "must derive economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." Marshall v. Gipson Steel, Inc., 806 So. 2d 266, 271 (Miss. 2002) (quoting Miss. Code Ann. § 75-26-3(d)). To establish the second prong, the court must consider whether the information was "subject to reasonable attempts to preserve its secrecy." Id. at 272.

Plaintiff contends that Gilco has violated the Mississippi Uniform Trade Secrets Act by illegally and improperly accessing Shannon's Asian customer list, contact information, purchasing agent information, processes for selling to customers, and customer preferences. The evidence presented in the record shows that J.T. Shannon has no direct proof that Gilco accessed its customer list. J.T. Shannon has only asserted that Gilco directly sold to three prior customers of J.T. Shannon: Samson/Lacquercraft; Cedar Home Enterprises; and Shanghai J & C Wood Co.

6

Both J.T. Shannon and Gilco are members of the American Hardwood Export Council ("AHEC"), an entity organized to promote American hardwood lumber in overseas markets. As part of its service to its members, AHEC gathers and disseminates trade leads from foreign buyers needing hardwood. The information includes the type of product and species needed, quantity, quality, delivery specifications, as well as the foreign company's name, address, telephone, email, and contact person. Not only is this information emailed to all AHEC members when received, it is also posted on the AHEC website for a period of three years. AHEC also maintains a database of all foreign companies that contact the AHEC that is updated monthly and widely available to any American company. Gilco introduced several AHEC trade leads into the record in this case. Included is a trade lead from the J.C. Wood Company of Shanghai.

In his deposition, Jack Shannon, Jr., testified that J.T. Shannon did not have any written contract or understanding with any of its Asian customers agreeing to purchase exclusively from J.T. Shannon. Moreover, Shannon remarked that in the Chinese hardwood lumber industry "[c]ustomers are easy to identify" and "have a choice of who they want to buy from." J.T. Shannon contends that Gilco would not have known those Chinese buyers' identities had Gilco not inspected its customer list. However, based on Jack Shannon, Jr.'s testimony, such customers would be easily identified.

As further evidence of the non-secret nature of J.T. Shannon's customers, Gilco presented a memorandum from Barrett to Gary Xu and his assistant, Vivian Ding, in which he notes that one of J.T. Shannon's American suppliers is "wanting to expand their offerings into Chinese manufactured products." Barrett asks the Chinese sales representative to "go through our contacts, mostly the business cards we have collected . . .," translate the list into English, and send a copy to the supplier. Thus, J.T. Shannon has offered at least a partial list of its customers to an American

supplier in the past. Based on the AHEC trade leads, Jack Shannon, Jr.'s testimony, and evidence that some customers' identities may have been willingly provided to another American supplier, the identities of J.T. Shannon's two non-exclusive customers - Cedar Home Enterprises and J.C. Wood Company - are not trade secrets.

Gilco's knowledge of Samson/Lacquercraft as a customer of J.T. Shannon and its purchasing agent is also not a trade secret as contemplated by the Uniform Trade Secret Act. J.T. Shannon, through Richard Barrett, introduced Scott England and James Harless to Gary Gone, the purchasing agent for Samson/Lacquercraft. Both Gilco representatives were given a personal tour through the Samson furniture manufacturing plant. Thus, Samson/Lacquercraft's identity as a customer of J.T. Shannon's and knowledge of Gary Gone as its purchasing agent was explicitly provided by J.T. Shannon and was, thus, readily ascertainable by proper means. Moreover, J.T. Shannon's introduction of the Samson officials and the role J.T. Shannon played in procuring the tour of the facility for Gilco cannot be said to be "reasonable attempts to preserve [that information's] secrecy." See Marshall, 806 So. 2d at 272.

J.T. Shannon claims that its pro forma invoice is also a trade secret that was misappropriated by Gilco. J.T. Shannon contends that Claire Chen copied a J.T. Shannon pro forma invoice for the benefit of Gilco. J.T. Shannon's pro forma invoice was widely disseminated to its customers across China. J.T. Shannon has failed to prove that it took steps to insure its confidentiality. Thus, J.T. Shannon's pro forma invoice was not a trade secret.

Plaintiff asserts that its customer preferences are a trade secret. According to an email from Claire Chen to Scott England, Gary Xu informed Chen that J.T. Shannon had sold to a customer of

8

Gilco's. Specifically, Chen noted:

> When I contacted this company Xiamen Quanyu today, they said they had sent a quote to our head office about 2 weeks ago, attachment is the email. Do you remember the company which I told you when you visited China in March? They use lots of Red oak. Gary told me JT Shannon bought 2 loads our Red oak, Fas 4/4 and 1 com 4/4each and sold to Xiamen Quanyu last summer. The customer care much about color, they like more wheat color.

Customer preferences and requirements have been recognized under Mississippi jurisprudence as trade secrets. See Tom James Co. v. Hudgins, 261 F. Supp. 2d 636, 641 (S.D. Miss. 2003) (citing Union Nat'l Life Ins. Co. v. Tillman, 143 F. Supp. 2d 638 (N.D. Miss. 2000) and Fred's Stores, Inc. v. M&H Drugs, Inc., 725 So. 2d 902 (Miss. 1998)). In her email, Chen acknowledges that she "contacted this company" and by deposition testified that she knew the company preferred the wheat color because she called them and asked herself. However, Chen noted that she did speak with her husband about customer preferences among other business topics at dinner. Thus, as to the customer preferences of Xiamen Quanyu, there exists a question of fact as to whether Gilco violated the Mississippi Uniform Trade Secrets Act.

J.T. Shannon also claims that Richard Barrett's February 9, 2006, email document detailing how to set up a Chinese office is a trade secret. The February 9 email document includes six detailed pages on exact steps Gilco should take to set up a Chinese office, including how much to pay Chinese workers, cultural expectations and perceptions, insights into the Chinese manufacturing industry, specifics on sales, and logistics in coordinating between United States and Chinese offices. It is clear after reviewing this document that the facts and information included are a direct result of Richard Barrett's experience as J.T. Shannon's Vice President of Sales, and particularly, his role in setting up that company's Shanghai office. Moreover, the information contained is economically

9

valuable as evidence by Darrell Sheets' email to Gary White regarding the document in which he notes, "I am sure a consultation fee will be involved for Rick Barrett." Moreover, J.T. Shannon attempted to maintain the secrecy of such information by including a "Confidentiality" section in Richard Barrett's employment contract. Such clause provides that the employee holds a fiduciary responsibility to the company and agrees that he will not "reveal, communicate or in any way divulge, to any person, firm, corporation or other entity any information, knowledge or data of whatsoever kind or nature which he acquired or was made available to him during his employment by the Company." Thus, the information in the February 9 email document is economically valuable and subject to reasonable attempts to maintain its secrecy. Accordingly, this document qualifies as a trade secret.

A cause of action under the MUTSA requires a misappropriation by improper means. Here, J.T. Shannon asserts that Gilco wrongfully induced Barrett to breach his duty to maintain the secrecy of this information. There is a question of fact as to whether Gilco misappropriated the information, and if so, whether it used improper means to do so.

*B. Tortious Interference with Contract and Business Relationship*

J.T. Shannon alleges that Gilco wrongfully induced Richard Barrett and Gary Xu to breach their contractual and fiduciary duties owed as a result of their employment contracts with J.T. Shannon. Specifically, Plaintiff claims that Gilco induced Barrett to develop a business plan for Gilco to open a Chinese office space. Moreover, Plaintiff asserts that, upon notice of Xu's no-compete clause, Gilco hired Gary Xu's wife in an attempt to maneuver around Xu's employment agreement.

An action for interference with contract will ordinarily lie when a defendant "maliciously interferes with a valid and enforceable contract, thereby causing one party not to perform and resulting in injury to the other contracting party." Cenac v. Murry, 609 So. 2d 1257, 1268 (Miss. 1992) (citing Mid-Continent Tele. Corp. v. Home Tele. Co., 319 F. Supp. 1176, 1199-1200 (N.D. Miss. 1970)). However, "[t]ortious interference with business relations . . . occurs when one unlawfully diverts prospective customers away from another's business." McBride Consulting Service, LLC v. Waste Management of Miss., Inc., 949 So. 2d 52, 55 (Miss. Ct. App. 2006).[2] In order to prove a claim for either tort, the plaintiff must prove that: (1) the acts were intentional; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted. Biglane v. Under the Hill Corp., 949 So. 2d 9, 16 (Miss. 2007). All factors must be met or the claim fails. Id.

Gilco first asserts that Barrett and Xu's employment contracts are not enforceable. Gilco contends that Barrett's contract was for the Midwest Region Sales Manager Position, but that Barrett was promoted to Vice President of Sales. However, the contract explicitly notes that the terms and conditions as outlined are applicable until employment is renegotiated in writing. As no party has introduced evidence that the terms of Richard Barrett's employment were renegotiated in writing,

---

[2] In its Motion for Summary Judgment, Plaintiff refers to an additional tortious interference with prospective business relations claim. As the tortious interference with business relations claim includes prospective business relations, and the elements of both claims are the same, Plaintiff's tortious interference with prospective business relations claim is treated analogously with the tortious interference with business relation clam.

11

the employment contract dated June 19, 2001, is applicable during all pertinent periods at issue in this lawsuit. Gilco additionally contends that as the contract between J.T. Shannon and Gary Xu was signed in China, this Court should apply Chinese law. Gilco further claims that Chinese courts do not recognize employment contracts between Chinese citizens and foreign employers. Gilco has not cited any United States court that has recognized this proposition. Accordingly, this Court will construe Gary Xu's employment agreement under the laws of the United States, which allow contracts between a foreign resident and a domestic corporation.

Richard Barrett testified that while an employee of J.T. Shannon, he developed a business plan for opening a Chinese office at the request of Scott England. Under Barrett's employment contract, he was prohibited from being "engaged in, concerned with, or in any way connected with any other commercial business pursuits, duties or any other outside activities, whether of a business, employment or personal nature, which would adversely affect his performance with respect to discharging his duties to the Company hereunder." However, for a claim of tortious interference with contract, "[i]t is essential both to aver and prove the defendant's knowledge of the contract in question. Such knowledge is not pleaded sufficiently by a mere allegation that he maliciously prevented performance of the contract." Irby v. Citizens Nat'l Bank, 121 So. 2d 118, 119 (Miss. 1960). J.T. Shannon has failed to even allege that Gilco had knowledge of Richard Barrett's employment contract. Gilco has expressly denied having any knowledge of an employment contract, no-compete clause, or confidentiality agreement between Richard Barrett and J.T. Shannon. Without knowledge of the contract, Gilco could not have tortiously procured its breach.

J.T. Shannon asserts that Gilco tortiously interfered with Gary Xu's employment contract by attempting to hire him as Gilco's Chinese sales representative and by hiring Claire Chen for that

12

position after he declined. The Mississippi Court of Appeals has held that "conduct related to a legitimate, employment-related objective constitutes justifiable acts, which cannot 'give rise to an inference of malice'" for the purpose of maintaining a tortious interference with contract claim. Progressive Cas. Ins. Co. v. All Care, Inc., 914 So. 2d 214, 215 (Miss. Ct. App. 2005) (citing Hopewell Enter., Inc. v. Trustmark, 680 So. 2d 812, 818-19 (Miss. 1996)).

Here, the record shows that Gilco desired to employ Xu because of his abilities as a salesman and experience in the Chinese lumber market. There has been no evidence that Gilco knew about Xu's employment contract or no-compete clause prior to the offer. Thus, J.T. Shannon cannot sustain its burden to prove malice in Gilco's attempted hire of Gary Xu.

J.T. Shannon classifies Gilco's hiring of Claire Chen as "subterfuge" of their intended purpose to interfere with Gary Xu's employment contract. Upon learning of Xu's employment contract with J.T. Shannon, England asked Xu if he knew of anyone else that could perform his same duties for Gilco. Xu suggested his wife Claire Chen. Chen had less than one year experience in the Chinese manufacturing industry.

Regardless of whether Plaintiff has presented a genuine issue of material fact as to Gilco's intention in the hiring of Claire Chen, it has not proven any damage suffered by the alleged interference. Cenac v. Murry, 609 So. 2d 1257, 1271 (Miss. 1992) (plaintiff has the burden of proof to show the loss it suffered which was caused by the defendant). The damages available for the tort of interference with contract are the "pecuniary loss resulting . . . from the failure of the third person to perform the contract." Id. at 1268. In order to prove a prima facie case of damages, the Plaintiff must show: "(1) a loss; and (2) that defendant's conduct caused the loss." All Care, 914 So. 2d at

221.

J.T. Shannon contends that the loss it suffered was the loss of Asian customers and prospective business. As noted above, J.T. Shannon's Asian customers were not under an exclusive agreement for the provision of American hardwood. Jack Shannon, Jr., acknowledged that its customers were easily identifiable and were free to choose from whom to purchase its products. Accordingly, future lost profits from Gilco allegedly stealing J.T. Shannon's customers are not damages resulting from any supposed interference with Gary Xu's employment. J.T. Shannon has failed to produce any evidence of the fourth element of a tortious interference with contract claim. Thus, Plaintiff's claims for tortious interference with contractual relations are dismissed.

Moreover, Plaintiff has failed to prove any damages from any alleged interference with business relations as well. Jack Shannon, Jr., acknowledged that foreign buyers are free to buy from whichever business they choose, and there was no exclusive arrangement or agreement between J.T. Shannon and any of its foreign buyers. Thus, there are no issues to be determined by a jury as to damages allegedly caused by Gilco tortiously interfering in J.T. Shannon's business relations or prospective business relations.

*C. Conversion*

J.T. Shannon asserts that Gilco wrongfully converted its trade secret information, as well as its Shanghai office and equipment. The Mississippi Supreme Court has held that "to make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." Wilson v. GMAC, 883 So. 2d 56, 68 (Miss. 2004) (quoting Smith v.

Franklin Custodian Funds, Inc., 726 So. 2d 144, 149 (Miss. 1998)).

Gilco asserts Plaintiff's trade secret conversion claim is preempted by the MUTSA. To the extent that this Court has ruled that information is not a trade secret, J.T. Shannon can not prove any ownership right in such information. Thus, a claim for conversion on those grounds fails. As to the above-recognized trade secrets, the Xiamen Quanyu customer preference and the February 9, 2006, email document, the Court must determine whether a conversion claim on these facts is dependent on the misappropriation of trade secret claim. See Fred's Stores, Inc., 725 So. 2d at 908 (adopting Virginia's test for preemption under the MUTSA). The Mississippi Supreme Court has held that if failure of the misappropriation claim under MUTSA would "doom the other common law claims," then those claims were preempted by the statute. Id.

Here, Plaintiff's conversion claims regarding the February 9, 2006, Richard Barrett email document and Xiamen Quanyu's customer preference information are not preempted because failure of the misappropriation claim does not doom these claims. The question for the jury under MUTSA is whether Gilco used improper means to obtain the trade secrets, as well as whether those trade secrets were misappropriated. To prevail on Plaintiff's conversion claim, Plaintiff must only prove that Gilco wrongly possessed such information. Thus, Plaintiff's conversion of trade secrets claim is not preempted.

J.T. Shannon has also pled a conversion claim as to the office space and equipment in its Shanghai office. Claire Chen admitted that, although she only visited Gary Xu's J.T. Shannon office once, she did have him print off Gilco documents on his computer and occasionally used his J.T. Shannon laptop. Plaintiff has presented a genuine issue of material fact as to whether Gilco

converted J.T. Shannon's Shanghai office and equipment for their own use.

*D. Punitives*

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases. See Gardner v. Jones, 464 So. 2d 1144, 1148 (Miss. 1985). "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 622 (Miss.1988). "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc., 759 So. 2d 1203, 1215 (Miss. 2000) (citing 15 Am.Jur., Damages, Sec. 265, p. 698). The Mississippi Supreme Court has instructed that "in order for the issue of punitive damages to warrant jury consideration, [the plaintiff] must show that a question of fact exists as to whether the aggregate of [the defendant's] conduct . . . evidences willful or wanton conduct or the commission of fraud." Bradfield v. Schwartz, 936 So. 2d 931, 938 (Miss. 2006).

A review of the motions, responses, exhibits, and depositions evidence that punitive damages are not warranted in this case. J.T. Shannon asserts that internal emails from Gilco show their nefarious intent. In particular, J.T. Shannon points to Scott England's email dated March 29, 2006, in which he states: "If [J.T. Shannon] think[s] [Gilco's delay in shipping lumber] is their biggest problem they are in for a real SHOCK!!!!" Moreover, Plaintiff contends that another Scott England email referencing his directly selling lumber to Samson/Lacquercraft and therefore avoiding paying J.T. Shannon a commission shows their malicious intent. Plaintiff assert these emails are evidence

16

that Gilco's actions were intentional and "absolutely calculated to take money out of Shannon's pocket and put it in Gilco's."

Jack Shannon, Jr., acknowledged that the lumber market is a "free market system" meaning the customers are free to do business with other entities, just as the suppliers are free to do business with whomever they choose. Moreover, he noted that there is no restriction on suppliers selling direct to customers. Thus, the conduct that J.T. Shannon complains of being wilful and wanton is a product of legitimate and fair competition in the marketplace. Accordingly, Plaintiff has not carried its burden as to punitive damages, and that claim is dismissed.

*E. Computer Fraud and Abuse Act*

J.T. Shannon's Computer Fraud and Abuse Act ("CFAA") claim is based on Chen's alleged conduct in accessing information on J.T. Shannon's computer servers in Horn Lake, Mississippi, deleting information off J.T. Shannon's computer, and using J.T. Shannon's computer to make sales of hardwood lumber in China for Gilco. Plaintiff has failed to sufficiently plead a cause of action under the CFAA.

The CFAA is a criminal statute, but it provides for a civil right of action. Section 1030(g) of CFAA provides in relevant part:

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. . . .

Thus, maintenance of a civil action under the CFAA is dependent on the plaintiff suffering "damage or loss by reason of a violation" of the CFAA. "[T]he term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C.

§ 1030(e)(8). "[T]he term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "The meaning of 'Loss' both before and after the term was defined by statute, has consistently meant a cost of investigating or remedying damage to a computer or a cost incurred because the computer's service was interrupted." L-3 Communs. Westwood Corp. v. Robicharux, 2007 WL 756528, 2007 U.S. Dist. LEXIS 16789, *9-10 (E.D. La. Mar. 8, 2007) (quoting Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd* 166 Fed. Appx. 559 (2006)). Further, losses under CFAA are compensable when they result from damage to a computer system or the inoperability of the accessed system. L-3 Communs., 2007 U.S. Dist. LEXIS 16789, *11-12 (citing Civil Center Motors, Ltd. v. Mason Street Import Cars, Ltd., 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005)). "[C]osts not related to computer impairment or computer damages are not compensable under the CFAA." Civil Center Motors, 387 F. Supp. 2d at 382. The language of CFAA permits recovery for lost revenue "only where connected to an interruption of service." See Nexans, 166 Fed. Appx. at 562. There is no allegation that there was damage to J.T. Shannon's computer or an interruption of service in this case.

Because J.T. Shannon has not asserted that there was damage to its computer or an interruption of service, it has not alleged a cognizable loss under the CFAA. Thus, Plaintiff's claims under the CFAA are dismissed.

*Conclusion*

Judgment as a matter of law is appropriate for the following of Plaintiff's claims:

misappropriation of customer names and pro forma invoice under the Mississippi Uniform Trade Secrets Act; tortious interference with contract and business relations; punitive damages; and a civil action under the Computer Fraud and Abuse Act. Accordingly, Gilco's Motion for Summary Judgment [290] is GRANTED IN PART and DENIED IN PART. As genuine issues of material fact exist to the remaining claims, Plaintiff's Motion for Summary Judgment is DENIED.

SO ORDERED, this the 15th day of January, 2010.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**